LEE, P.J.,
 

 for the Court:
 

 PROCEDURAL. HISTORY
 

 ¶ 1. Vanessa Francis Decker was indicted on four counts of exploitation of a vulnerable adult. Each count reflected a different time period between November 9, 2005, and April 5, 2007. Decker was found guilty in the Circuit Court of Clay County of Count IV, which stated that she used $4,120 of her mother’s money without her mother’s consent at a time when her mother was a vulnerable adult. Count I was voluntarily dismissed, and she was found not guilty of Counts II and III. Decker was ordered to serve a four-year suspended sentence and to pay a fine of $250 plus court costs and restitution in the amount of $4,120. Decker’s sentence is to remain
 
 *660
 
 suspended unless she violates the terms of her probation or fails to pay her fíne, restitution, or costs. Aggrieved with her conviction and sentence, Decker filed a motion for a directed verdict or, in the alternative, a new trial, which was denied by the trial court.
 

 ¶ 2. Decker now appeals, arguing: (1) she was denied sufficient notice to prepare a defense, and (2) the statute defining exploitation of a vulnerable adult is vague, indefinite, and uncertain. Finding no error, we affirm the judgment of the trial court.
 

 FACTS
 

 ¶ 3. Once Decker’s mother, Nannie Mae Morris, was no longer able to live on her own, she came to live with Decker. Morris lived with Decker until Decker’s son suffered an injury,' and Decker had to leave the home to take care of him. It was during the time period when Decker was taking care of her son that she was found to have exploited her mother by writing checks out of her mother’s checking account. Decker had power of attorney over her mother and had access to her mother’s checking account so she could cash her mother’s social-security checks and draw on her account.
 

 ¶ 4. Decker presented the testimonies of several family members that supported her position that Morris consented to Decker’s use of her money. Decker’s sister, Shirley Doss, testified that she did not know how Decker had spent their mother’s money, but “she was told by [Morris] that [Decker] could use it for whatever she needed, you know, for the house or whatever.” Doss testified that Decker and Morris “had a very close relationship.” Doss testified that Morris had told her “many times for years that she wanted her baby [Decker] to take care of her when she got to where she couldn’t take care of herself. And she wanted her to have her money for whatever she needed.” Another of Decker’s sisters, Marilyn Janice Henley, testified that it was their mother’s wish for Decker to care for her when she got older. Henley testified that she heard Morris tell Decker on the phone that “if you need a check for anything, you write it.” Decker’s son testified that he and his stepfather built a twelve foot by fourteen foot room with a bathroom onto Decker’s house for her mother. Decker’s son testified that his stepfather paid for the room with a credit card and did not ask Morris to pay for any of the expenses associated with building the room.
 

 DISCUSSION
 

 I. INDICTMENT
 

 ¶ 5. Decker argues that she was denied the constitutional right to know the specific charge against her because the jury instructions did not follow the language of the charge in the indictment. Specifically, the indictment charges that Decker obtained $4,120 of her mother’s money “without” her mother’s consent. The jury instruction, however, states that Decker should be found guilty if she exploited her mother by using her resources “with or without” her mother’s consent.
 

 ¶ 6. Count IV of the indictment states:
 

 [Decker,] on and between December 5, 2006, and April 5, 2007, several acts and/or transactions therein being connected and/or constituting parts of a common scheme or plan, within the jurisdiction of this Court and legal boundaries of Clay County, Mississippi, did willfully, feloniously, unlawfully, and knowingly exploit Nannie Mae Morris, a vulnerable adult as defined by § 43^17-[5](n) of the Mississippi Code of 1972, as amended, to wit: by engaging in a continuous plan by which Vanessa Francis
 
 *661
 
 Decker wrote checks drawn on the Ban-corpSouth checking account of Nannie Mae Morris ... to herself and her husband, Billy E. Decker, or withdrew cash from said account of Nannie Mae Morris while she was not actively in the care of Vanessa Francis Decker, thereby depriving Nannie Mae Morris of over $250.00 of her funds and/or resources with knowledge of Nannie Mae Morris’s inability to perform normal activities of daily living or provide for her own care or protection due to mental, emotional, or physical impairment, disability or dysfunction, or due to the infirmities of aging, without the consent of Nannie Mae Morris, thereafter using the currency obtained $4,120.00, for her own profit or advantage, contrary to and in violation of § 43-47-19(1) & (2)(b) of the Mississippi Code of 1972....
 

 ¶ 7. Jury instruction S-3 states that in order to find Decker guilty of exploitation of a vulnerable adult, the jury must find the following beyond a reasonable doubt:
 

 1. Vanessa Decker, on and between the 5th day of December, 2006 and the 5th day of April, 2007 in Clay County;
 

 2. Did willfully and without lawful authority;
 

 3. Exploit Nannie Morris, a vulnerable adult;
 

 4. By illegally or improperly;
 

 5. Using Nannie Morris, or her resources, in the amount of $4,120.00;
 

 6. For her own profit or advantage;
 

 7. Regardless of whether it was done with, or without, the consent of Nannie Morris[.]
 

 If you find that the State has proven all of the above elements beyond a reasonable doubt, then you shall find the defendant, Vanessa Decker, guilty as charged in Count IV of the Indictment.
 

 If the State has failed to prove any of the above elements beyond a reasonable doubt, then you shall find the defendant not guilty as charged in Count IV of the Indictment.
 

 ¶ 8. Decker’s counsel objected to element seven of the jury instruction, arguing that it did not follow the indictment. Decker’s counsel proposed a jury instruction that stated that if “Decker’s use of the money was with the consent of Nannie Mae Morris, then Decker must be found not guilty.” The jury instruction was refused. Decker moved for a directed verdict on this issue. In ruling on the motion, the trial judge stated that “the statute would control even though the indictment alleges otherwise.” The trial court found that since it is irrelevant whether the exploitation occurred with or without consent, the language in the indictment was “mere surplusage,” and the court allowed the indictment to be amended accordingly.
 

 ¶ 9. Decker is correct that the jury instruction failed to follow the language of the indictment. However, the jury instruction follows the definition of exploitation set out in Mississippi Code Annotated section 43-47-5(i) (Rev.2009). Section 43-47-5® states that exploitation is “the illegal or improper use of a vulnerable adult or his resources for another’s profit or advantage,
 
 with or without
 
 the consent of the vulnerable adult, and includes acts committed pursuant to a power of attorney. ‘Exploitation’ includes, but is not limited to, a single incident.” (Emphasis added).
 

 ¶ 10. The testimony implied, but did not directly state, that Decker’s use of the money was for her son’s benefit with her mother’s consent. Regardless, the statute makes clear that any improper use of a vulnerable adult’s resources for another’s advantage is exploitation. The State is correct in its assertion that consent is a
 
 *662
 
 non-issue because the State did not have to prove anything with regard to consent.
 

 ¶ 11. We find that Decker was put on notice by the terms of the statute that the charge of exploitation could be proven regardless of whether or not Decker’s mother consented to the use of the money. Therefore, we find this issue is without merit.
 

 II. SECTION 43^7-5®
 

 ¶ 12. Decker argues that Mississippi Code Annotated section 43 — 47—5(i) is unconstitutionally vague because there is no explanation of the terms “illegal or improper.” Decker asserts that the statute makes it impossible to determine whether a financial transaction is criminal.
 

 ¶ 13. The statute in question reads as follows: “‘Exploitation’ means the illegal or improper use of a vulnerable adult or his resources for another’s profit or advantage, with or without the consent of the vulnerable adult, and includes acts committed pursuant to a power of attorney. ‘Exploitation’ includes, but is not limited to, a single incident.” Miss.Code Ann. § 43-47 — 5(i).
 

 ¶ 14. The supreme court in
 
 Boatner v. State,
 
 754 So.2d 1184, 1190 (¶ 17) (Miss.2000) found that this very statute was not unconstitutionally vague. In
 
 Boatner,
 
 Bonnette Boatner argued “that the statute gives no guidance as to the meaning of ‘abuse!,]’ ‘neglect[,]’ or ‘exploitation’ and that, therefore, the ‘criminal act is left up to a jury, or in this case, a judge to define.’ ”
 
 Id.
 
 at 1188 (¶ 8). The supreme court found: “Clearly, subsections (a),(i), and (k) of section 43-47-5 ... not only offer guidance, but lay out plain definitions of the terms ‘abuse[,]’ ‘neglect[,]’ and ‘exploitation!,]’ so that the judge in this case had no need to, nor did he, provide his own definitions.”
 
 Id.
 

 ¶ 15. “[T]he test concerning statutory construction is whether a person of ordinary intelligence would, by reading the statute, receive fair notice of that which is required or forbidden.”
 
 Id.
 
 at 1189 (¶ 14) (citing
 
 State v. Burnham,
 
 546 So.2d 690, 692 (Miss.1989)). Decker was found to have used her mother’s money for the advantage of someone other than her mother during a time period in which she was not caring for her mother. It was not disputed that Decker’s mother was a vulnerable adult. Under the statute, Decker’s actions constituted exploitation. We cannot find that the statute is unconstitutionally vague. This issue is without merit.
 

 ¶ 16. THE JUDGMENT OF THE CLAY COUNTY CIRCUIT COURT OF CONVICTION OF FELONY EXPLOITATION OF A VULNERABLE ADULT AND SENTENCE OF FOUR YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH FOUR YEARS SUSPENDED, AND TO PAY $4,120 IN RESTITUTION AND A $250 FINE IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., MYERS, P.J., IRVING, GRIFFIS, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR. BARNES, J., NOT PARTICIPATING.